# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| BSN Live, Inc. d/b/a DNVR and DNVR Sports | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-121 |
| | ) | |
| Bonneville International Corporation | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

BSN Live, Inc. dba DNVR and DNVR Sports ("BSN" or "Plaintiff") for its

Complaint against Defendant Bonneville International Corporation ("Bonneville" or

"Defendant") alleges as follows:

## INTRODUCTION

1.      BSN is a leader in the sports media fan experience industry in Colorado.

2.      BSN has an effective Colorado state trade name for "DNVR Sports"

formed July 29, 2019, ID No. 201916112570.

3.      BSN has an effective Colorado state trade name for "DNVR" formed

August 4, 2020, ID No. 20201678418.

4.      BSN began using DNVR and DNVR (Stylized) (the "Marks") as the brand

name for BSN for its services and social media accounts as early as July 2019.

5.      BSN owns a United States federal trademark registration for "DNVR" (US

Reg. No. 6769953).

6.      BSN owns United States federal trademark applications for the DNVR

(Stylized) mark (US Serial Nos. 97388621 and 97388647).

7.      This is an action for trademark infringement, unfair competition, trade dress infringement, dilution by tarnishment, and tortious interference arising out of Bonneville's trademark infringement of Plaintiff's trademarks.

8.      On January 3, 2023, Bonneville announced an umbrella of sports media fan experience services as "DENVER SPORTS" to advertise overlapping services to the same customers as BSN.

9.      With the January 3, 2023 announcement Bonneville also unveiled a black and white logo accompanying the name "DENVER SPORTS" to advertise overlapping services to the same customers as BSN.

10.     In response to the announcement, consumers, prospective consumers, and non-purchasers on social media immediately commented about the similarities between the use of DENVER SPORTS and DNVR and DNVR Sports and the accompanying logos. Consumers, prospective consumers, and non-purchasers commented on the similarity of the marks while others believed the two entities merged.

11.     In light of the extensive actual confusion, BSN sent an 89-page written demand to Bonneville on January 6, 2023, with substantial evidence of confusion, requesting Bonneville to remove its name and logo.

12.     Despite BSN's written demand that Bonneville cease using Plaintiff's Marks, or similar marks, and immediately implement a different name and logo, Bonneville has not complied. Defendant continues to use the infringing wordmark, logo, and trade dress to market substantially similar services to the same relevant consumers and prospective consumers as Plaintiff.

13.     Consequently, BSN brings the following claims against Defendant— trademark infringement 15 U.S.C. § 1114(1), unfair competition 15 U.S.C. § 1125(a),

false designation of origin 15 U.S.C. § 1125(a), trade dress infringement 15 U.S.C. § 1125(a), false advertising 15 U.S.C. § 1125(a), trademark dilution 15 U.S.C. § 1125(c), common law unfair competition claims, and Colorado state common law trademark and unfair competition claims C.R.S. § 7-70-103. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) ("[t]he elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act [15 U.S.C. § 1125(a)]").

## PARTIES

14.     BSN Live, Inc. is a Colorado corporation in good standing in the state of Colorado with its principal place of business located at 2239 E Colfax Ave, Denver, CO 80206, serving clients from all over the United States, including Colorado.

15.     Defendant Bonneville International Corporation is a Utah corporation in good standing in the state of Utah with its principal place of business located at 55 North 200 West, Salt Lake City, UT 84101. Bonneville is a wholly owned subsidiary of Deseret Management Corporation, also a corporation formed under the laws of the state of Utah and in good standing. Bonneville is a foreign registered entity in the state of Colorado.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1337, 1338, because this case arises under the Trademark Act of 1946, 15 U.S.C. §1501, *et seq*. This Court has pendent jurisdiction over Plaintiff's state law claims asserted herein pursuant to 28 U.S.C. §1367.

17.     Venue is proper in this District under 28 U.S.C. §1391(b) in that, *inter alia*, Defendant's actions of infringement knowingly cause Plaintiff harm, Defendant advertises its services in the forum, and a substantial portion of the events described in

this Complaint took place in this District. The Defendant has sufficiently knowingly availed themselves of the laws of the United States and the State of Colorado.

## **GENERAL ALLEGATIONS**

18.     BSN owns United States Trademark Registration No. 6,769,953 for the service mark DNVR for the following services:

"Membership club services in the nature of providing discounts to members in the field of sports journalism, special event planning and dining; Promoting the goods and services of others by providing a website featuring product reviews, testimonials and discount information; Promoting the goods and services of others" in International Class 35;

"Chatroom services for social networking; Streaming of audio, visual and audiovisual material via a global computer network; Streaming of audio, visual, and audiovisual material on the Internet; Providing internet chatrooms" in International Class 38;

"Entertainment services, namely, providing podcasts in the field of sports, entertainment, popular culture and current events; Hosting social entertainment events, namely, event watch parties, birthday parties, fund-raisers, holiday parties and other social events, for others; Media production services, namely, video and film production; Production of podcasts; Providing a website featuring resources, namely, non-downloadable publications in the nature of multimedia content, videos, articles, podcasts, and images in the field of sports, entertainment, popular culture and current events; Providing an Internet website portal featuring entertainment news and information specifically in the field of sports, entertainment, popular culture and current events" in International Class 41; and,

"Bar and restaurant services" in International Class 43.

The Registration Certificate is attached as **Exhibit A**.

19.     BSN owns United States Trademark Applications Serial Nos. 97388621 and 97388647 for the DNVR design marks. The application is for the following services:

"Membership club services in the nature of providing discounts to members in the field of sports journalism, special event planning and dining; Promoting the goods and services of others by providing a website featuring product reviews, testimonials and discount information; Promoting the goods and services of others" in International Class 35;

"Streaming of audio, visual and audiovisual material via a global computer network; Streaming of audio, visual, and audiovisual material on the Internet" in International Class 38;

"Entertainment services, namely, providing podcasts in the field of sports, entertainment, popular culture and current events; Hosting social entertainment events, namely, event watch parties, birthday parties, fund-raisers, holiday parties and other social events, for others; Media production services, namely, video and film production; Production of podcasts; Providing a website featuring resources, namely, non-downloadable publications and multimedia content in the nature of non-downloadable videos, articles, podcasts, and images in the field of sports, entertainment, popular culture and current events; Providing an Internet website portal featuring entertainment news and information specifically in the field of sports, entertainment, popular culture and current events" in International Class 41; and,

"Bar and restaurant services" in International Class 43.

The Applications are attached as **Exhibit B**.

20.     BSN's service mark consists of the colors black and white and the use of a simple graphic using white lines on a black background depicting the skyline to the left of the written DNVR brand name. Evidence of use of this mark is attached as **Exhibit C**.



21.     Since 2019 BSN has spent significant time and money creating their brand and logo and marketing their services in interstate commerce through the United States via the internet and across Colorado.

22.     BSN produces several sports related podcasts, creates social media and news articles surrounding Colorado sports teams, has a sports bar named DNVR in the Denver metro area, has several podcasts and live stream sports media shows, holds tailgate and other watch parties for Colorado sports teams, and sells merchandise among other services.

23.     BSN owns and maintains an internet website offering its services at <thednvr.com>; examples from the website and its design are attached as **Exhibit D**.

24.     The DNVR website utilizes a black header and footer with the white logo displayed in the top left corner of each page, with the wordmark to the right of the logo and simple white pages with boxed images and bold headlines leading to audio and visual content are listed at the top of the header. The "podcast" page is arranged in an organized array of boxes featuring each podcast show with unique designs to differentiate themselves.

25.     The DNVR Instagram page utilizes the white logo displayed in the profile picture, with the wordmark underneath the logo. BSN's Instagram handle is @dnvr_sports and the name on the page is DNVR Sports. *See* **Exhibit E**.

26.     The DNVR Twitter page utilizes a black header photo with DNVR logos throughout the photo. The profile picture is the white logo, with the DNVR wordmark underneath the logo. BSN's Twitter handle is @DNVR_Sports and the name on the page is DNVR Sports. The description of the page also depicts the page as a "Media & News Company" in Denver, CO. *See* **Exhibit F**.

27.     The DNVR Facebook page utilizes the same black header photo with DNVR logos throughout the photo. The profile picture is the white logo, with the DNVR wordmark underneath the logo. The name on the page is DNVR Sports. *See* **Exhibit G**.

28.     The DNVR YouTube page utilizes a black and white header photo with DNVR logos throughout the background and a bold depiction of the DNVR logo centered in the photo. The profile picture is the white logo, with the DNVR wordmark underneath the logo. BSN's YouTube handle is @DNVR_Sports and the name on the page is DNVR Sports. *See* **Exhibit H**.

29.     BSN prides itself on excellent service, uplifting fandom experience and standards of high-quality entertainment and sports news. Over the past four years, BSN has earned a strong reputation and significant goodwill among its customers and become a staple in the Denver and Colorado sports community.

30.     BSN is based in Denver, Colorado and the content branded DNVR and DNVR SPORTS is all about Colorado sports teams and directed to the Colorado sports fan base.

31.     Bonneville, a Salt Lake City company, announced the DENVER SPORTS sports media fan experience umbrella and its logo for the following local media outlets that are directed to the Colorado sports fan base:

- Denver's Sports Station 104.3 The Fan (KKFN-FM)
- ESPN Denver 1600 (KEPN-AM and 104.3 HD2) and 104.3 HD3
- DenverSports.com
- Coffee Break digital video show
- Orange and Blue Today digital video show
- Mile High Hoops podcast
- Mile High Hockey podcast

The announcement is attached at **Exhibit I**.

32.     Moments after Bonneville's announcement of the launch of Denver Sports, the Colorado sports fan base was exhibiting confusion between Bonneville's sports media brand and BSN's sports media brand. **Exhibit J**.

33.     Upon information and belief, Defendant launched its business and began using the DENVER SPORTS brand on January 3, 2023 and provides sports media fan experience content to the Colorado sports fan base.

34.     Bonneville's DENVER SPORTS brand is white block letters on a black background using simple white graphics depicting the skyline to the left of the DENVER SPORTS mark. Examples of use of this mark are attached as **Exhibit K**.



35.     Bonneville's reporting carries a reputation among fans of utilizing triggering headlines and commentary, also known as "click bait," to engage fans, regardless of any negativity the headline might create. Bonneville further encourages the negative engagement in the comments section when conversing with fans. Consumers

have called attention to this tactic, going as far to say that they prefer to seek content from other media outlets instead. *See* **Exhibit L**.

36.     Bonneville's DENVER SPORTS brand operates <denversports.com>. Evidence of the examples of the layout of the website are attached as **Exhibit M**.

37.     The DENVER SPORTS website utilizes a black header and footer with the white logo displayed in the top left corner of each page, with the wordmark to the right of the logo and simple white pages with boxed images and bold headlines leading to audio and visual content are listed at the top of the header. The "podcast" page is arranged in an organized array of boxes featuring each podcast show which each have a unique design to differentiate themselves. This layout is nearly identical to <thednvr.com>.

38.     The DENVER SPORTS Instagram page utilizes the white logo displayed in the profile picture, with the wordmark underneath the logo. Bonneville's Instagram handle is @denversportscom and the name on the page is Denver Sports. *See* **Exhibit N**.

39.     The DENVER SPORTS Twitter page utilizes a black header photo with the white logo displayed in the center of the photo. The profile picture is the white logo, with the DENVER SPORTS wordmark underneath the logo. Bonneville's Twitter handle is @DenverSportsCom and the name on the page is Denver Sports. The description of the page also depicts the page as a "Media & News Company" in Greenwood Village, Colorado. *See* **Exhibit O**. This design is nearly identical to DNVR's Twitter design.

40.     The DENVER SPORTS Facebook page utilizes the same black header photo with the white logo displayed in the center of the photo. The profile picture is the white logo, with the DENVER SPORTS wordmark underneath the logo. The name on the page is 104.3 The Fan, but underneath, the name is @DenverSportsCom. *See* **Exhibit P**.

41.     The DENVER SPORTS YouTube page utilizes the same black and white header photo with the white logo displayed in the center of the photo. The profile picture is the white logo, with the DENVER SPORTS wordmark underneath the logo. Bonneville's YouTube handle is @DenverSportsCom and the name on the page is Denver Sports. *See* **Exhibit Q**.

42.     Below and attached as **Exhibit R** are the two marks shown in use in commerce adjacent to one another. Bonneville's use of the marks and its page designs and layouts are nearly identical to BSN's use, designs, and layouts.



43.     Both BSN and Bonneville utilize YouTube to distribute audiovisual material. A search for "DENVER SPORTS" and "DENVER SPORTS COM" results in first a listing for the DNVR Sports channel, before a listing for the Denver Sports channel. From a Google search of "denversports" and "denversportscom", <thednvr.com> is a result alongside, if not before <denversports.com>. *See* **Exhibit S**.

44.     On January 6, 2023, BSN sent a letter to Bonneville evidencing the confusion among the fan base and requesting Bonneville cease and desist from using DENVER SPORTS and the corresponding logo. This letter is attached as **Exhibit T**.

45.     Bonneville declined to comply with the cease-and-desist request of BSN. *See* **Exhibit U**.

46.     Further evidence of confusion continued to stream on social media in the days following Bonneville's announcement on January 3, 2023. *See* **Exhibit V**.

47.     Due to the multiple instances of actual confusion, BSN felt compelled to act quickly as they have no quality control over Bonneville or their content. Colorado sport fans of DNVR were mistaken as to the source of the information they were receiving, and the possible reputational harm cannot be cured with anything but an injunction to stop using the confusingly similar brand name to promote sports media fan experience content in Colorado.

48.     Some clients visited articles or clicked on articles for DENVER SPORTS not realizing the articles or content are not produced by DNVR. *See* **Exhibit W**.

49.     Raj Sharan, employed by Bonneville and the current general manager of DENVER SPORTS, was aware of DNVR and DNVR's branding prior to the launch of DENVER SPORTS on January 3, 2023. Raj Sharan congratulated Andrew Mason who joined 104.3 The Fan, now under the umbrella of Bonneville and DENVER SPORTS, on May 16, 2022, as a senior Broncos writer after working for BSN under the DNVR brand since 2019. *See* **Exhibit X**.

50.     Andrew Mason, after working for DNVR, was aware of the DNVR branding prior to working under Bonneville for DENVER SPORTS. *Id.*

51.     The employee of DENVER SPORTS, Rachel Vigil, discussed DNVR branding and services with a Denver sports fan on Twitter prior to the launch of DENVER SPORTS. *See* **Exhibit Y**.

52.     The sports media fan experience industry is a relatively small industry, and the employees of the various sports media providers are aware of one another. The employees at Bonneville knew of the DNVR branding prior to the launch of the DENVER SPORTS brand. *See* **Exhibit Z**.

53.     Defendant has not ceased all use of the infringing marks; fans continue to be confused between the brands and Bonneville continues to infringe BSN's exclusive right to its federally registered trademark for DNVR and common law rights to its logos and trade dress.

## COUNT I

### Trademark Infringement
### (Lanham Act, 15 U.S.C. §1114(1))

54.     Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through  53  with the same force and effect as if fully set forth herein.

55.      Based upon the allegations set forth above, Defendant's use of "DENVER SPORTS" mark as it appears on their website and throughout various social media platforms create a likelihood of consumer confusion and thereby is an infringement of Plaintiff's federally registered service mark, United States Trademark Registration No. 4,469,669  for "DNVR" when used in connection with media production services, namely, video and film production, Production of podcasts; Providing a website featuring resources, namely, non-downloadable publications in the nature of multimedia content, videos, articles, podcasts, and images in the field of sports, entertainment, popular culture and current events; Providing an Internet website portal featuring entertainment news and information specifically in the field of sports, entertainment, popular culture and current events; Chatroom services for social networking; Streaming of audio, visual and audiovisual material via a global computer network; Streaming of

audio, visual, and audiovisual material on the Internet; Providing internet chatrooms; Membership club services in the nature of providing discounts to members in the field of sports journalism, special event planning and dining; Promoting the goods and services of others by providing a website featuring product reviews, testimonials and discount information; Promoting the goods and services of others.

56.     As a result of Plaintiff's extensive promotion and use of its mark, the consuming public recognizes Plaintiff's DNVR mark as a distinctive indicator of the source of Plaintiff's services. The consuming public relies upon the DNVR mark to identify Plaintiff's services and distinguish them from other sports media news feeds and podcasts. Through Plaintiff's promotion, advertising and use of its service mark, Plaintiff has acquired substantial and valuable goodwill.

57.     Use of Defendant's confusingly similar mark online and in social media platforms has caused confusion and mistake and has deceived customers when used in connection with the marketing, distribution, promotion of sports media fan experience related content.

58.     Defendant has continued to use its confusingly similar mark without Plaintiff's approval, acquiescence or authorization, and contrary to the Plaintiff's express demands.

59.     At all relevant times, Defendant has known that Plaintiff owns the DNVR mark.

60.     Defendant has failed to comply with Plaintiff's request to cease all use of its confusingly similar mark.

61.     Defendant has continued to use the confusingly similar mark in commerce in a way that is likely to cause confusion, mistake and deception as to the source, origin, affiliation, sponsorship or approval of Defendant's sports media fan experience services.

62.     Continued use of Defendant's confusingly similar mark after Defendant was made aware of the confusingly similar nature of its mark, and after it was made aware of the actual confused clients of Plaintiff shows the willful intent of the Defendant to infringe the Plaintiff's federally registered service mark for DNVR.

63.      Defendant's use of its confusingly similar mark without Plaintiff's consent, is likely to continue to cause confusion, or to cause mistake, or to deceive or to cause those encountering Defendant's services to believe the services originate from or are in some manner endorsed, sponsored or approved by or connected with Plaintiff.

64.     Despite Defendant's knowledge of Plaintiff's rights in the registered stylized mark DNVR Defendant has knowingly, willfully violated and infringed Plaintiff's rights in the service mark within the meaning of the Lanham Act, 15 U.S.C. § 1114.

65.     The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law.

## COUNT II

### Federal Unfair Competition and False Designation of Origin
### (Lanham Act, 15 U.S.C. §1125(a))

66.     Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 65 with the same force and effect as if fully set forth herein.

67.      Defendant's prominent use of its confusingly similar mark in connection with the marketing and offering of sports media fan experience services presents the false

and misleading impression to the public that sports media fan experience content provided by Defendant are affiliated with, connected with, or associated with Plaintiff.

68.     Defendant's prominent use of its confusingly similar mark creates a false and misleading designation of origin which is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant's services with the sports media fan experience services offered by Plaintiff under its DNVR mark as evidenced by actual instances of confused clients of the Plaintiff.

69.     Upon information and belief, Defendant's acts have been and are being committed with the purpose and intent of misappropriating and trading upon Plaintiff's goodwill and reputation, symbolized by Plaintiff's well-recognized DNVR mark.

70.     Upon information and belief, Defendant's acts as aforedescribed, namely, the use of a simulation and confusingly similar mark to that of Plaintiff's well-recognized DNVR mark, constitutes unfair competition and a false designation of the source or origin of Defendant's services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

71.     The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law.

72.     Upon information and belief, by its acts herein complained of, Defendant has made profits to which it is not in equity entitled.

## COUNT III

### Dilution by Tarnishment
### 15 U.S.C. § 1125(c)(2)(C)

73.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 72 with the same force and effect as if fully set forth herein.

74.     Upon information and belief, Plaintiff's Marks are famous and distinctive. Upon information and belief, the Marks are famous because the Marks have been in use in different forms since 2019 and 2020; the Marks are widely advertised; the Marks are registered with the USPTO and the Colorado Secretary of State.

75.     Upon information and belief, Defendant began using the "DENVER SPORTS" mark after the Plaintiff's marks became famous.

76.     Upon information and belief, Defendant has used and continues to use the "DENVER SPORTS" mark in commerce on websites, social media accounts, and other services.

77.     Upon information and belief, Defendant's use of the "DENVER SPORTS" mark creates a likelihood of dilution by blurring because the association of the Plaintiff's Marks with the Defendant's poor-quality services and unflattering and negative portrayal associated with "DENVER SPORTS" mark harms the reputation of the famous Marks.

78.     Upon information and belief, the type of engagement the Defendant promotes is based upon outrage and division, which tarnished the Plaintiff's Marks, which base engagement upon honesty, humor, and positivity.

79.     Upon information and belief, the Plaintiff and the Defendant are direct competitors in the Colorado sports-media business and Rocky Mountain region sports-media business.

80.     Upon information and belief, the Plaintiff's Marks and the Defendant's use of the "DENVER SPORTS" mark nearly identical and difficult to distinguish.

## COUNT IV

### Trade Dress Infringement
### 15 U.S.C. § 1125(a)

81.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 80 with the same force and effect as if fully set forth herein.

82.     Plaintiff is using the distinctive and non-functional black and white colors in conjunction with a simple graphic which depicts the skyline to the left of the written DNVR brand name for its services in interstate commerce since as early as July of 2019. Plaintiff has invested substantial time, effort, and financial resources promoting its trade dress in connection with the marketing and sale of its goods and services in interstate commerce.

83.     Plaintiff's black and white skyline logo and designs are non-functional and distinctive.

84.     Plaintiff's black and white skyline logo and designs have secondary meaning in the marketplace in that consumers associate that trade dress with a single source or origin. They are likely to make that same association when the trade dress is used in connection with another's products and services.

85.     Defendant's manufacture, distribute, advertise, offer for sale, or sell goods and services in interstate commerce, including digital content, applications, and radio shows using a trade dress that is identical or substantially similar to Plaintiff's black and white skyline logo and design. Images of Defendant's infringing trade dress are attached as Exhibits D and E. Plaintiff did not authorize or license the use of its distinctive trade dress on or in connection with the infringing services. On information and belief, Defendants have manufactured, distributed, advertised, sold, and offered the infringing services for sale using Plaintiff's trade dress with the intention of misleading, deceiving,

or confusing consumers as to the origin of their goods and of trading on Plaintiff's reputation and goodwill.

86.     Upon information and belief, Defendants' advertising, distributing, services using a black and white skyline logo and design trade dress copied from and confusingly similar to Plaintiff's black and white skyline logo and designs trade dress are likely to cause confusion on the part of purchasers and potential purchasers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     Defendants' unauthorized use of Plaintiff's black and white skyline logos and designs trade dress in interstate commerce on or in connection with the offering of services as described above constitutes direct or contributory trade dress infringement under 15 U.S.C. § 1125(a).

88.     As a direct and proximate result of Defendants' trade dress infringement Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

89.     Defendants' acts of trade dress infringement will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

## COUNT IV

### Common Law Trademark Infringement
### C.R.S. § 7-70-103

90.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 89 above, with the same force and effect as if fully set forth herein.

91.     Plaintiff's Marks are protectable because Plaintiff has acquired rights to the Marks through continuous use in commerce since as early as July of 2019.

92.     Defendant has used the "DENVER SPORTS" mark in commerce to advertise its sports media fan experience services to the Colorado market of sports fans.

93.     Defendant's use of the "DENVER SPORTS" mark has caused and is likely to continue to cause consumer confusion with Plaintiff's Marks due to the similarity of the services of each party, the similar and limited geographic markets, similar consumers, similar colors, similar visual appearances, similar sounds, and similar commercial impressions. Upon information and belief, the false impression of Plaintiff's use of the "DENVER SPORTS" mark conveys a false impression that is likely to deceive or confuse consumers.

94.     As more fully set forth above, Plaintiff owns the DNVR stylized mark which identifies Plaintiff's sports media fan experience services and distinguishes their unique goodwill and services from others and indicates that Plaintiff is the source of the services provided.

95.     At all relevant times, Defendant has known that Plaintiff owns and has established rights in the DNVR marks and logos.

96.     Upon information and belief, Defendant deliberately copied and misappropriated Plaintiff's service mark in the creation of their confusingly similar mark with the intent to confuse, deceive and mislead the consuming public into believing there is an association or affiliation between Plaintiff and Defendant.

97.     Plaintiff has not authorized or licensed Defendant to use its confusingly similar mark and has in fact demanded that Defendant cease and desist from all use of its confusingly similar mark.

98.     Defendant's aforementioned acts create a likelihood of confusion or misunderstanding constituting acts of trademark infringement in violation of common law.

99.     The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Plaintiff irreparable harm.

100.     Upon information and belief, Defendant has profited from the mistaken consumer interaction from those fans who were confused as to the source of the sports media fan experience content provided based on the use of Defendant's confusingly similar service mark.

101.     Defendant's deceptive acts and practices have been injurious to the Plaintiff and the consuming public.

## COUNT V

### Unfair Competition and Deceptive Trade Practices
### C.R.S. 6-1-101 et seq.

102.      Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 101 above, with the same force and effect as if fully set forth herein.

103.     Defendant is engaged in an unfair and deceptive trade practice by willfully using trademarks nearly identical to Plaintiff's federally protected wordmark and Plaintiff's stylized trademark in which it has established common law rights.

104.     Defendant is utilizing the infringing trademarks in connection with for-profit Colorado sports media fan experience services that overlap with Plaintiff's for-profit Colorado sports media fan experience services.

105.    Defendant's use of the infringing trademarks has caused deception and actual confusion among consumers of both Defendant and Plaintiff in the Colorado sports media fan experience consumer base.

106.    Plaintiff owns federal trademark rights in its trademark and has established common law rights in its stylized marks.

107.    Since the inception of Defendant's actions, Plaintiff's consumers have been deceived and actually confused as to the source of the sports media fan experience services associated with the trademarks, injuring Plaintiff's rights and goodwill in its trademarks.

108.    Upon information and belief, Defendant's deceptive acts and practices have caused injury and harm to the Plaintiff and the consuming public. But for Defendant's actions, Plaintiff's trademarks would not have been infringed upon, Plaintiff's consumers would not have been deceived and actually confused as to the source of the services, and Plaintiff's reputation and goodwill in its trademarks would not have been injured.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1.    A judgment at first during the pendency of this action providing for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and thereafter perpetually enjoining Defendant, its corporate officers, agents, servants, employees, attorneys and all persons in active concert or participation with them and acting for, with, by, though, or under them, and each of them, from:

a.  using in any form Defendant's confusingly similar mark or any other confusingly similar mark to Plaintiff's registered service mark on or in connection

with any part of Defendant's business including all aspects of sports media fan experience services, the advertising, promotion or distribution of any media;

      b.   representing directly or indirectly in any form or manner whatsoever, that Defendant's business or products are those of Plaintiff, or are in any manner associated with, sponsored, or approved by Plaintiff or otherwise taking any action likely to cause confusion, mistake or deception on the part of purchasers as to the source, origin or sponsorship of Defendant's business or services; and

      c.   otherwise infringing Plaintiff's DNVR marks or competing unfairly with Plaintiff; and

      d.   surrendering and destroying all infringing materials.

2.     A judgment ordering Defendant to file with this Court and to serve on Plaintiff within thirty (30) days after the service of the injunction a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction;

3.     A judgment ordering Defendant to account for and pay over to Plaintiff pursuant to Title 15, United States Code, Section 1117 and Colorado common law, all profits realized by Defendant and actual damage suffered by Plaintiff by reason of Defendant's unlawful acts herein alleged.

4.     As a result of Defendant's willful misconduct that the Court impose punitive  damages and find that this case is exceptional and award profits realized by Defendant by reason of its unlawful acts and award treble damages and order Defendant to pay Plaintiff all its attorney's fees in this action in a sum and manner deemed appropriate by this Court based on the deliberate and willful violation by Defendant of

Plaintiff's rights as set forth in paragraphs 7 through 17 herein and pursuant to 15 U.S.C.

§ 1117(a) and Colorado common law; and

     5.     A judgment ordering costs and prejudgment interest; and

     6.     A judgment ordering such other and further relief as justice may require.

DATED:  January 13, 2023        Respectfully Submitted,

/s/ Jessie Pellant

Jessie L. Pellant
Managing Partner
StudioIP LLC
jpellant@studioiplaw.com
O:   (303) 563-5360
D:   (720) 443-1773